

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD81782 |
| | ) | |
| JERRILL A. GREEN, | ) | Opinion filed: December 3, 2019 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### THE HONORABLE PATRICK W. CAMPBELL, JUDGE

Division One: Edward R. Ardini, Jr., Presiding Judge,
Mark D. Pfeiffer, Judge and Cynthia L. Martin, Judge

Jerrill Green ("Green") appeals his convictions of sodomy in the second degree, assault in the third degree, and felonious restraint entered by the Circuit Court of Jackson County ("trial court") following a jury trial. He raises four points on appeal: (I) that the trial court plainly erred by entering a conviction for felonious restraint on count VI, which was not a lesser-included offense of the charged crime of kidnapping; (II) and (III) that the trial court plainly erred in submitting verdict-directing instructions relating to counts II and IV that permitted the jury to convict him without agreeing to the specific act he committed, thereby violating his right to a unanimous verdict; and (IV) that the trial court erred by ordering his sentence for sodomy in the second degree to run consecutive to his sentence for felonious restraint based on an erroneous

interpretation of section 558.026, RSMo.[1] We affirm in part, reverse in part and remand for a new trial.

## Factual and Procedural Background[2]

On the night of July 21, 2016, D.H.[3] was waiting for a ride home when she was approached by Green in his vehicle. D.H. agreed to perform sex acts on Green at his residence in Grandview for one hour in exchange for eighty dollars.

When Green and D.H. arrived at Green's home, they proceeded to the bedroom and D.H. took off her clothes and wig. D.H. began performing oral sex on Green but, after a few minutes, was unable to continue because her mouth had become dry. D.H. indicated that she wanted to stop and would refund his money. Green told D.H. that she had already been paid and was "going to earn it." Green forced his penis into D.H.'s mouth, causing her to gag.

When D.H. again asked if she could leave, Green responded that "he was going to have to get his nine, and he began to reach at the foot of his bed like he was reaching for a gun." Believing that Green was reaching for a weapon, D.H. resumed performing oral sex on him. Shortly thereafter, Green's ankle monitor sounded and his phone rang. Green answered the call and spoke with someone for a few minutes.

After Green completed the call, D.H. grabbed the phone and dialed 911. She could not speak to the dispatcher so screamed for help. In an effort to stop D.H. from screaming, Green wrapped the telephone cord around her neck, strangling her.

---

[1] Statutory citations are to the Missouri Revised Statutes, updated through the 2015 supplement.

[2] We recite the facts in the light most favorable to the jury's verdicts. *See State v. Adams*, 571 S.W.3d 140, 142 (Mo. App. W.D. 2018).

[3] We use initials to protect the victim's identity pursuant to section 595.226, RSMo Supp. 2017.

D.H. was able to get up and tried to run to the front door, but was stopped by Green. He pulled her into the living room near the sofa and put his hands around her neck, choking her.

Meanwhile, upon receiving the 911 call, officers from the Grandview Police Department were dispatched to Green's home for an unknown disturbance. When they arrived, they heard a woman screaming and attempted to kick down the door. At that point, the door to the house opened from the inside and officers observed Green and D.H., both naked. D.H. was covered in blood and had a laceration on her forehead, swelling under her eyes, and ligature marks on her neck. D.H. ran outside and collapsed on the sidewalk.

D.H. was taken by ambulance to Research Medical Center for examination. The laceration on her head required stitches, and she had a concussion. The emergency room doctor also noted that D.H. had multiple contusions and abrasions on her body, including abrasions on her neck "consistent with something being wrapped around it, either hands or some sort of rope-like material[.]"

Green proceeded to trial on six counts: count I, rape in the first degree;[4] count II, sodomy in the first degree; count III, assault in the first degree for striking D.H.'s head against the floor; count IV, assault in the second degree for strangling D.H.; count V, assault in the second degree for punching D.H.; and count VI, kidnapping. At trial, three Grandview police officers, the emergency room doctor, the sexual assault nurse examiner, and D.H. testified. The jury acquitted Green of counts I, III, and V. The jury found Green guilty of the lesser-included offenses of sodomy in the second degree on count II and assault in the third degree by strangulation on count IV; in addition to felonious restraint on count VI. The trial court sentenced Green to five years for sodomy in the second degree, time served for assault in the third degree, and eight years for

---

[4] D.H. testified that Green had sexual intercourse with her on his bed and again attempted to penetrate her in the living room after he stopped her from leaving.

3

felonious restraint. The trial court ordered the sentence for sodomy in the second degree to be served consecutive to the sentence for felonious restraint, stating that the consecutive sentence was required under section 558.026, RSMo. Green appeals. Additional facts are stated throughout this opinion, as relevant to our discussion herein.

## Discussion

Green raises four points on appeal. In his first point, he alleges that the trial court plainly erred in convicting him of felonious restraint because he was not charged with that crime and it is not a lesser-included offense of kidnapping. In Points II and III, Green claims that the trial court plainly erred in instructing the jury on counts II and IV, arguing the relevant verdict directors did not require the jury to unanimously agree on the specific act supporting each conviction. In Point IV, Green alleges that the trial court erred by ordering his sentence for sodomy in the second degree to be served consecutive to his sentence for felonious restraint based on the trial court's erroneous application of the law relating to the requirements of section 558.026, RSMo.

### *Point I – Felonious restraint conviction*

In his first point, Green alleges that the trial court plainly erred by entering a conviction for felonious restraint, arguing he was not charged with felonious restraint and felonious restraint is not a lesser-included offense to the charged crime of kidnapping. We agree.

Green was charged by information in lieu of indictment with kidnapping under section 565.110, RSMo. During the instructions conference, the State requested the jury also be instructed on felonious restraint as a lesser-included offense to kidnapping. Green's counsel announced she had no objection and it was submitted to the jury. At Green's request, false imprisonment was also submitted to the jury.[5] The jury found Green guilty of felonious restraint.

---

[5] False imprisonment is a lesser-included offense of both felonious restraint and kidnapping when the kidnapping is effectuated by confinement as it was in this case. *State v. Cobbins*, 21 S.W.3d 876, 880 (Mo. App. E.D. 2000) (stating

4

Green acknowledges that because he did not object to the felonious restraint instruction[6] or the entry of conviction for that offense, review of this claim can only be for plain error. *See State v. Johnson*, 284 S.W.3d 561, 568 (Mo. banc 2009) (stating "[n]on-preserved issues are reviewed for plain error[.]"). "Plain-error review involves a two-step analysis." *State v. Muhammad*, 334 S.W.3d 164, 166 (Mo. App. E.D. 2011) (citation omitted). "First, we determine whether the trial court committed plain error, which is error that is evident, obvious, and clear." *Id*. (citation omitted). If we find that the trial court committed plain error, we may then consider "whether manifest injustice or miscarriage of justice actually resulted from the error." *Id*. (citation omitted).

"[A] person cannot be convicted of a crime with which the person was not charged unless it is a lesser included offense of a charged offense." *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992) (citation omitted). In count VI, Green was charged with kidnapping. At the State's request, felonious restraint was also submitted to the jury; and it was for this offense that the jury returned a guilty verdict and the trial court entered judgment of conviction. However, "[f]elonious restraint is not a lesser included offense of kidnapping because it requires proof of an element, exposure to a substantial risk of harm, which is not included in the kidnapping statute." *Williams v. State*, 524 S.W.3d 553, 565 (Mo. App. W.D. 2017) (citations omitted).[7] Therefore, the trial court

---

that false imprisonment is a lesser-included offense of felonious restraint). *State v. Ayansu*, 558 S.W.3d 135, 142 (Mo. App. E.D. 2018) (stating that false imprisonment is considered a nested lesser-included offense to a kidnapping charge based on confinement).

[6] The State argues that we should decline to review Green's claim for plain error based on the statement of Green's counsel that she had no objection to the submission of the felonious restraint instruction. We note that Green does not now raise a claim of instructional error but rather asserts that the entry of conviction for felonious restraint is constitutionally flawed. While a nexus unquestionably exists between the giving of the felonious restraint instruction and the conviction for that offense later entered, we elect to provide plain error review to Green's claim.

[7] Relevant to this case, kidnapping requires that a person "unlawfully confine[ ] another without his or her consent for a substantial period, for the purpose of . . . [i]nflicting physical injury on . . . another." § 565.110.1(5), RSMo. Felonious restraint requires that a person "knowingly restrain[ ] another unlawfully and without consent so as to

plainly erred by entering a conviction for an offense that was neither charged nor constituted a lesser-included offense of the charged crime.

Because we find plain error, we must now determine whether that error resulted in manifest injustice or a miscarriage of justice. "Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice." *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)). "To be entitled to relief under the plain error rule, an appellant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *Id*. (quoting *State v. Winfield*, 5 S.W.3d 505, 516 (Mo. banc 1999)). "In other words, the appellant must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id*. (quoting *Winfield*, 5 S.W.3d at 516).

The Eastern District of this Court was called upon to address a similar issue in S*tate v. Pullum*, 281 S.W.3d 912 (Mo. App. E.D. 2009). In *Pullum*, the defendant was charged with multiple offenses including statutory sodomy in the second degree. *Id*. at 914. However, the statutory sodomy count was "misdescribed" in the captions and summaries contained in the initial complaint, indictment, and substitute information as being a charge for statutory rape in the second degree, and "the parties relied on this misdescription in prosecuting and defending the case." *Id*. at 917. This mutual misunderstanding persisted throughout the proceedings and Pullum was ultimately convicted of the crime of statutory rape in the second degree. *Id*. at 916. Noting that statutory rape in the second degree was not a lesser-included offense of the charged crime of

---

interfere substantially with his liberty and expose[ ] him to a substantial risk of serious physical injury." § 565.120.1, RSMo.

statutory sodomy in the second degree, the court held that "[t]he entry of judgment on a conviction not charged in the substitute information constitutes plain error requiring reversal." *Id*. at 917, 918.

The State attempts to avoid the holding of *Pullum* by characterizing the issue before us as one of simple variance between the charging document and verdict directing instruction.[8] The State's efforts are unavailing. "Under the 'variance' caselaw, 'when a crime may be committed by any of several methods, . . . the method or methods submitted in the verdict directing instruction must be among those alleged in the information.'" *State v. Hendren*, 524 S.W.3d 76, 83 (Mo. App. W.D. 2017) (quoting *State v. Lee*, 841 S.W.2d 648, 650 (Mo. banc 1992)). "A variance is not fatal, and will not require reversal, unless it submits a new and distinct offense from that with which defendant was charged." *Id*. (quoting *State v. Glass*, 136 S.W.3d 496, 520 (Mo. banc 2004)). Here, felonious restraint was not a separate method of committing the crime of kidnapping; instead, it was an entirely new and distinct uncharged offense. Thus, variance jurisprudence is of no relevance to our analysis.

"Due process requires that a defendant not be convicted of an offense not charged in an indictment [or information]." *Pullum*, 281 S.W.3d at 916 (citations omitted). Green was not charged with felonious restraint, and felonious restraint is not a lesser-included offense to the charged crime of kidnapping. Because Green was convicted of a crime with which he was not charged, we must, as the court did in *Pullum*, find that manifest injustice has occurred and reverse and vacate Green's conviction for felonious restraint.

---

[8] The State further argues that *Pullum* is not controlling because the elements of statutory sodomy in the second degree and statutory rape in the second degree were clearly different while the elements of kidnapping and felonious restraint are "substantially the same." Regardless of whether the elements of kidnapping and felonious restraint are similar, "substantially the same" is not the test for an offense to be considered a lesser-included offense.

*Instructions on Remand*

Having concluded that Green's conviction for felonious restraint must be reversed, we must now determine the scope of the proceedings permitted on remand. At oral argument, the parties agreed that if we grant Point I and reverse Green's conviction for felonious restraint, then we must remand to the trial court for a new trial on count VI. However, the parties disagreed on the offense to be retried. The State argued that it was entitled to retry Green on the original charge of kidnapping. Green argued that double jeopardy principles would prohibit a new trial on kidnapping and limit any retrial to the offense of false imprisonment. We agree with Green.

It is well-settled that the jury's guilty verdict for felonious restraint in the original trial served as an implicit acquittal of Green on the charge of kidnapping. *See State v. Bradshaw*, 593 S.W.2d 562, 566 (Mo. App. W.D. 1979) ("The conviction for second degree murder was an implicit acquittal of first degree (felony) murder so that retrial for that offense would put the defendant twice in jeopardy") (citing *Green v. U.S.*, 355 U.S. 184, 190 (1957) (holding that in addition to reliance on "the assumption of implicit acquittal," retrial on higher offense is also prohibited by double jeopardy because jury had full opportunity to return a verdict on the higher offense, and was dismissed without doing so and without defendant's consent)); *State v. Moseley*, 735 S.W.2d 46, 48 (Mo. App. W.D. 1987) ("conviction of the lesser [offense] impliedly acquits the defendant of the greater offense"); *Shopbell v. State*, 686 S.W.2d 521, 523 (Mo. App. W.D. 1985) ("When the jury convicted movant of second-degree murder, they impliedly acquitted him of first-degree murder."); *Ray v. State*, 532 S.W.2d 478, 482 (Mo. App. S.D. 1975) (citing *Price v. Georgia*, 398 U.S. 323 (1970) ("Having been found guilty only of manslaughter, movant had been 'implicitly' acquitted of the greater offense of first degree murder and he could not be retried for murder.")). Under these circumstances, a retrial for kidnapping would be barred by the double

8

jeopardy clause of the United States and Missouri Constitutions. *See Shopbell*, 686 S.W.2d at 523; *Bradshaw*, 593 S.W.2d at 566.

The only lesser offense to kidnapping that was properly submitted and not reached by the jury in the original trial was false imprisonment.[9] As a result, we agree with Green that, on remand, the State may retry Green only for the offense of false imprisonment.

Point I granted.

### *Points II and III – Instructional error relating to count II and count IV*

In his second and third points, Green alleges that the trial court erred in submitting Instructions No. 9 and No. 11 relating to count II (sodomy) and Instruction No. 20 relating to count IV (assault), arguing that each verdict director failed to identify the specific act committed by Green constituting each offense, allowing for non-unanimous jury verdicts. Green acknowledges that he failed to object to any of these instructions on unanimity grounds and that review, if any, would be for plain error.

We first address the State's argument that Green waived appellate review of Points II and III by virtue of being the party that offered Instructions No. 11 and No. 20—the verdict directors upon which he was found guilty of counts II and IV. Missouri courts have held "that a defendant cannot complain about an instruction given at his request." *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012) (citing *State v. Leisure*, 796 S.W.2d 875, 877 (Mo. banc 1990)); *see also State v. Oudin*, 403 S.W.3d 693, 698 (Mo. App. W.D. 2013) (stating that the defendant's "failure to object to the instruction given and her submission of an instruction containing the same alleged error results in waiver of her claim on appeal.").

---

[9] False imprisonment was submitted to the jury with a required finding that could have been, but was not, included in the verdict director for felonious restraint. We therefore cannot find that by convicting Green of felonious restraint, the jury necessarily found each of the essential elements submitted to it by the verdict director for false imprisonment.

[T]he proffering of an incorrect instruction to the trial court is an invited error by the party who proffered the instruction. It defies logic and the clear directives of Missouri law to allow a defendant to both proffer an instruction to the trial court and to complain that the trial court's submission of that instruction to the jury is reversible error. . . . It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making.

*Bolden*, 371 S.W.3d at 806 (internal quotations and citations omitted). However, in *State v. Celis-Garcia*, our Supreme Court rejected the State's waiver argument when the defendant had failed to object to the State's verdict directors and had offered her own verdict directors that included the same alleged defect. 344 S.W.3d 150, 154 n.3 (Mo. banc 2011) (citations omitted).

In *Oudin*, this Court reconciled the apparent inconsistency between the Supreme Court's finding in *Celis-Garcia* and its holding in *Bolden*:

We recognize that, in [*Celis-Garcia*], the Missouri Supreme Court refused to apply waiver where the defendant submitted an instruction that was ultimately refused but nevertheless suffered from the same defect she . . . challenge[d] on appeal. But we find *Celis-Garcia* distinguishable . . . . In *Celis-Garcia*, the instructions submitted by both the State and the defendant complied with MAI, but the applicable MAI was determined to be in conflict with the Missouri Constitution. By failing to object to the MAI-compliant instruction, the defendant failed to preserve her claim on appeal, subjecting it to plain error review. But because the defendant submitted an MAI-compliant instruction, she did not create or commit any error that would result in *waiver* of her claim on appeal. Oudin, however, submitted an instruction that *failed* to comply with the MAI Notes on Use. Thus, unlike the defendant in *Celis-Garcia*, Oudin *did* create or commit an error[.] . . . Thus, we read *Celis-Garcia* and *Bolden* together to mean that, where a defendant submits a faulty instruction, the defendant waives appellate review as to the specific defect presented in the proffered instruction, regardless of whether the court ultimately uses the proffered instruction or the State's version containing the same defect.

*Oudin*, 403 S.W.3d at 698 n.10 (internal quotations and citations omitted).

More recently, in *State v. Clay*, 533 S.W.3d 710 (Mo. banc 2017), our Supreme Court held that the defendant waived his claim that the trial court's submission of a jointly proffered self-defense instruction was plain error because he "invited the instructional error by proffering jointly with the state a self-defense instruction that omitted the withdrawal language he now asserts should

have been included." *Clay*, 533 S.W.3d at 715. In that case, the Court recognized that in *Celis-Garcia* it "reaffirmed the principle that a defendant 'does not waive plain error review by failing to object to a faulty jury instruction or by failing to submit a correct instruction[,]'" but went on to distinguish *Clay* from *Celis-Garcia* noting that "Mr. Clay actively collaborated in drafting the instruction he now asserts was erroneous, and he 'may not take advantage of self-invited error of his own making.'" *Id.* at 715 (quoting *Bolden*, 371 S.W.3d at 806).

*Instructions No. 9 and No. 11*

In count II, Green was charged with sodomy in the first degree based on Green placing his penis in D.H.'s mouth by use of forcible compulsion. At the instructions conference, the State offered Instruction No. 9, the verdict director for sodomy in the first degree, which stated:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about July 21, 2016, in the County of Jackson, State of Missouri, the defendant placed his penis in the mouth of D.H., and

> Second, that such conduct constituted deviate sexual intercourse, and

> Third, that defendant did so by the use of forcible compulsion, and

> Fourth, that defendant did so knowingly,

then you will find the defendant guilty under Count II of sodomy in the first degree.

> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Green complains on appeal that Instruction No. 9 did not specify which incident of Green placing his penis in D.H.'s mouth formed the basis of the sodomy offense "or otherwise require the jury to unanimously agree on which underlying incident occurred[.]" Green did not object to the submission of Instruction No. 9 when offered by the State and then offered Instruction No. 11, a

11

verdict director for the lesser-included offense of sodomy in the second degree, which the trial court also submitted to the jury. Instruction No. 11 stated:

> As to Count II, if you do not find the defendant guilty of sodomy in the first degree as submitted in Instruction No. 9, you must consider whether he is guilty of sodomy in the second degree under this instruction.
>
> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about July 21, 2016 in the County of Jackson, State of Missouri, the defendant placed his penis into the mouth of D.H., and
>
> Second, that such conduct constituted deviate sexual intercourse, and
>
> Third, that defendant did so without the consent of D.H., and
>
> Fourth, that defendant knew that he did not have the consent of D.H.,
>
> then you will find the defendant guilty under Count II of sodomy in the second degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A review of Instruction No. 11 reveals that it contained the same alleged deficiency Green complains was contained in Instruction No. 9. Green attempts to minimize the import of his proffered instruction to a finding of waiver by asserting that Instruction No. 11 simply tracked the State's instruction as it was required to do and that our Supreme Court's refusal to apply waiver in *Celis-Garcia* controls under these facts.

We disagree. Based on our Supreme Court's recent holdings in *Bolden*, 371 S.W.3d at 806, and *Clay*, 533 S.W.3d at 715, and this Court's reconciliation of *Celis-Garcia* in *Oudin*, 403 S.W.3d at 698 n.10, we find that Green waived appellate review of the instructional error asserted in Point III by submitting Instruction No. 11—from which the jury found him guilty—that contained the specific defect complained of on appeal.

12

*Instruction No. 20*

The verdict director for assault in the third degree[10] submitted to the jury stated:

> As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about July 21, 2016, in the County of Jackson, State of Missouri, the defendant recklessly caused physical injury to D.H. by strangling her, and
>
> Second, that defendant did not act in lawful defense of property as submitted in Instruction No. 22,
>
> then you will find the defendant guilty under Count IV of assault in the third degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Similar to his argument directed at the verdict directors for the sodomy count, Green asserts that the jury was presented with evidence of more than a single instance of strangulation against D.H. and that Instruction No. 20 did not require the jury to unanimously agree to a specific incident. Green attempts to avoid a finding of waiver relating to this claim of instructional error by arguing that Instruction No. 20 was offered by the State. This assertion is not supported by the record. The "dirty" copy of Instruction No. 20 indicates that it was submitted by Green. Green counters that he simply added the defense-of-property tail to the State's proffered instruction and therefore Instruction No. 20 should be considered to have been submitted by the State. This claim does not survive scrutiny as it ignores that the State objected to Instruction No. 20 arguing that the defense-of-property language was not supported by the evidence. As a result, we find that it was

---

[10] Green objected to the submission of third degree assault, a misdemeanor, based on statute of limitations grounds. The trial court overruled Green's objection and agreed to submit his instruction for assault in the third degree to the jury, which was identical to an instruction offered by the State but, as discussed later, added a lawful defense of property tail.

Green who offered Instruction No. 20 and, by doing so, waived appellate review of his claim that the trial court's submission of Instruction No. 20 to the jury was erroneous. *See Bolden*, 371 S.W.3d at 806; *Clay*, 533 S.W.3d at 715; and *Oudin*, 403 S.W.3d at 698 n.10.

Points II and III denied.[11]

### *Point IV – Consecutive sentencing under section 558.026, RSMo*

In his final point, Green alleges that the trial court erred by ordering his sentence for sodomy in the second degree to run consecutive to the sentence for felonious restraint based on an erroneous interpretation of section 558.026, RSMo.[12]

Section 558.026.1(3) states:

> Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except in the case of multiple sentences

---

[11] Even if Green had not waived review of these claims, we are dubious that the conduct at issue in Points II and III constitutes multiple-act scenarios implicating unanimity concerns.

"A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56 (citation omitted). These types of cases usually involve repeated instances of sexual abuse against minor victims. *See State v. Escobar*, 523 S.W.3d 545, 549 (Mo. App. W.D. 2017). "Because the victims are children and often do not have a recollection of the specific dates on which the abuse occurred, the State in charging the criminal conduct attempt[s] to set forth in generic terms the alleged criminal conduct within a certain timeframe." *Id*. "However, where there are repeated instances of the same charged criminal conduct within the same charged timeframe, the possibility that a jury may convict based on different underlying acts presents the danger that a jury, in finding the defendant guilty, has done so without unanimously agreeing on a specific instance of criminal conduct." *Id*.

Following *Celis-Garcia*, where our Supreme Court found that the verdict directors for multiple occurrences of hand-to-genital contact were not sufficiently specific to require unanimous verdicts, 344 S.W.3d at 157, and other cases with similar outcomes, appellants have alleged unanimity violations in cases beyond those involving sexual misconduct against children. For example, in *State v. Gilbert*, the defendant alleged that verdict directors relating to charges of assault of a law enforcement officer were insufficient because they failed to identify the specific locations where he fired shots at individual officers who were pursuing him. 531 S.W.3d 94, 100 (Mo. App. W.D. 2017).

In *Gilbert*, we found that, although the defendant fired multiple shots at several officers during the pursuit, it was not a multiple acts case because "the conduct here occurred during a single event, the pursuit of Gilbert after his escape from prison, and lacked any intervening events or fresh impulses of motivation." *Id*. at 101. Similarly, in this case, both the conduct supporting count II, sodomy in the second degree, and count IV, assault in the third degree by strangulation, occurred during a single course of conduct where Green and D.H. were involved in an approximately five-minute altercation in Green's home.

[12] Despite our reversal of Green's felonious restraint conviction in Point I, due to the possibility of a retrial for false imprisonment, resolution of Point IV is not moot.

of imprisonment imposed for any offense committed during or at the same time as, or multiple offenses of, the following felonies: . . . Sodomy in the first degree, forcible sodomy, or sodomy[.]

During sentencing, the State argued that section 558.026 required the trial court to impose the sentence for sodomy in the second degree consecutive to the sentence for felonious restraint. Green's counsel objected, arguing that sodomy in the second degree did not fall under the statute's consecutive-sentence requirement. In pronouncing the consecutive sentences, the trial court noted that "[m]y reading of 558.026 is that those sentences must be served consecutively and it will be my order that they be served consecutively and that he will receive credit for time served."

On appeal, Green argues that "[t]he plain language of §558.026 does not include second-degree sodomy, and the rules of statutory construction, including the statutory history of sodomy crimes, require that second-degree sodomy not be included in §558.026.1 as one of the crimes for which sentences must run consecutively." The State concedes that the trial court ordered the sentence for sodomy in the second degree to run consecutive to the sentence for felonious restraint based upon a mistaken belief that it was required to do so under section 558.026 and that we must remand to the trial court for resentencing.

We agree with the parties and vacate the sentence imposed by the trial court for sodomy in the second degree and remand to the trial court for resentencing on count II.[13]

Point IV granted.

---

[13] If Green is retried on count VI for false imprisonment and he is convicted, the trial court will have the *discretion* but is not statutorily required to order the sentence for sodomy in the second degree to run consecutive to any sentence imposed for count VI.

## Conclusion

Green's convictions for assault in the third degree and sodomy in the second degree are affirmed. Green's conviction for felonious restraint is reversed and remanded for a new trial for false imprisonment. Green's sentence for sodomy in the second degree is vacated, and we remand for resentencing.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

16