

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
Respondent, )
)
v. ) No. SC100790
)
DAVID THOMPSON, )
)
Appellant. )

*Opinion issued April 15, 2025*

## APPEAL FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
The Honorable Ryan J. Helfrich, Judge

David Thompson appeals his conviction for fourth-degree domestic assault and violating an order of protection. He claims the circuit court erred: (1) in overruling his motion to dismiss on the ground he was denied his right to counsel when the court held a preliminary hearing even though Thompson was not represented; (2) in rejecting his proposed lesser-included offense instruction for fourth-degree domestic assault; and (3) in overruling his objection to the court's submission of a corrective instruction after the jury announced its verdicts. Because each of Thompson's claims lack merit, the circuit court's judgment is affirmed.

# BACKGROUND

Thompson was charged with felony domestic assault for striking his ex-boyfriend ("Victim") with his vehicle. Victim, who had a protective order against Thompson, was visiting Washington, Missouri. During his visit, Victim exited a business and noticed a vehicle he believed Thompson was using. Victim approached the vehicle to see if Thompson was inside, and, as Victim approached, Thompson accelerated the vehicle toward Victim and struck him. Victim flew into the air and was injured. Thompson fled the scene.

The state charged Thompson with one felony count of third-degree domestic assault and one misdemeanor count of violating an order of protection. On June 9, 2022, Thompson appeared at his preliminary hearing on the felony count. Thompson was not represented by counsel at the hearing. The associate circuit division found "probable cause to believe the Defendant committed the felony charged," and Thompson was bound over to the circuit division for trial.

After the preliminary hearing, and with the assistance of counsel, Thompson filed a motion to dismiss for violation of his right to counsel. He alleged that the preliminary hearing is a "critical stage" of criminal proceedings in Missouri; therefore, his lack of counsel at the preliminary hearing violated his right to counsel under the Sixth Amendment and the Missouri Constitution. The circuit court overruled his motion, and the case proceeded to trial.

Prior to closing arguments at trial, the circuit court held a jury instruction conference and asked if there were any objections to Instruction No. 7, the verdict

2

director for the lesser-included offense of fourth-degree domestic assault. The state responded that it had no objection and that the defense also wanted the instruction. The circuit court asked defense counsel for a response regarding Instruction No. 7, to which Thompson's counsel stated: "No response," and "we are in agreement with this propos[ed] lesser." Thompson's counsel noted he had previously submitted an alternative proposal, which was word-for-word the same as the instruction for third degree domestic assault, but, with respect to the circuit court's quite different version, went on to state with respect to the circuit court's quite different version: "So I have no objection to this lesser, but I do want the record to reflect that I had proposed the lesser, you know, containing the same elements." Based on these responses from counsel, the circuit court submitted Instruction No. 7 to the jury.

After deliberations, the jury returned a verdict of not guilty as to Count I, a verdict of guilty as to Instruction No. 7 (the instruction for the lesser-included offense of fourth-degree domestic assault), and a verdict of guilty as to Count II for violating the order of protection. After the verdicts were read, the circuit court asked whether the parties wanted the jury polled, but both declined. Immediately after, the circuit court stated, "The verdict of the jury, both as to Count I and Count II, will be accepted by the Court and entered upon the record." The circuit court announced it would recess before proceeding to the jury sentencing phase.

During the recess, the circuit court determined the jury had returned inconsistent verdicts for Count I. The jury had been given three verdict forms for Count I: (a) a form finding Thompson guilty of fourth-degree domestic assault; (b) a form finding Thompson

3

guilty of fourth-degree domestic assault; and (c) a form finding Thompson not guilty. The jury foreperson signed and returned the second and third forms, raising some doubt as to whether the jury/the juries intended to acquit Thompson as to Count I or find him guilty of the lesser-included charge under Count I. The state prepared a curative instruction, Instruction No. 16, to return the case to the jury for further deliberations. Thompson's counsel objected, arguing the jury had found Thompson not guilty on Count I so the court should proceed to sentencing on Count II only. The objection was overruled.

The circuit court informed the jury it had returned inconsistent verdicts for Count I, and the verdicts would no longer be accepted. The jury was instructed to return to deliberations and specify whether it intended to find Thompson not guilty on Count I or guilty of fourth-degree domestic assault as submitted in Instruction No. 7. The jury deliberated and returned a guilty verdict on Count I based on the lesser-included offense of fourth-degree domestic assault set forth in Instruction No. 7. The circuit court then proceeded to jury sentencing. Thompson was sentenced to seven days in jail and fined $100.00. The circuit court suspended execution of the jail sentence and gave Thompson two years of court-supervised probation. Thompson appeals. This Court has jurisdiction under article V, section 10 of the Missouri Constitution.

## ANALYSIS

### I. Thompson's right to counsel was not violated

Thompson contends he was deprived of his right to counsel under the Sixth Amendment of the United States Constitution and the Missouri Constitution when the

4

associate circuit division held a preliminary hearing even though he was not represented by counsel. This Court reviews *de novo* questions of law, including whether a constitutional right has been violated. *State v. Sisco*, 458 S.W.3d 304, 312 (Mo. banc 2015).

Thompson repeatedly told the associate circuit division he wanted counsel but then spent nearly 18 months delaying proceedings by failing to diligently seek and retain counsel. Accordingly, this Court does not reach the question of whether a preliminary hearing is a "critical stage" of proceedings in Missouri. Thompson gave up whatever right to counsel he had by failing to exercise that right. At most, Thompson was entitled to an opportunity to secure counsel, and he failed to make diligent use of that opportunity.

In cases in which proceedings begin with a felony complaint, the associate circuit division must hold a preliminary hearing "within a reasonable time" after the filing. Rule 22.09(a).[1] Thompson's case began on November 10, 2020 with the state filing a

---

[1] Between the filing of the complaint against Thompson on November 10, 2020, and his preliminary hearing on June 9, 2022, Rule 22.09 was altered. The version of the rule in effect at the time the complaint was filed was effective from December 31, 2006, to February 28, 2021, and stated only that "a preliminary hearing shall be held within a reasonable time." The version of Rule 22.09 in effect from March 1, 2021, to June 30, 2022, stated that "a preliminary hearing shall be held within a reasonable time, but no later than 30 days following the defendant's initial appearance if the defendant is in custody and no later than 60 days if the defendant is not in custody." This version also allowed the court to extend the time limit one or more times for good cause for up to 30 days if the defendant is in custody and up to 60 days if the defendant is not. The current version of the rule, effective from July 1, 2022, to present, is identical in all relevant aspects to the version immediately preceding it. Regardless of which version of the rule applies to Thompson's case, the Court's analysis does not change. The 18 months it took

complaint. Over the next year and a half, Thompson's failure to diligently seek and retain counsel caused the preliminary hearing to be delayed beyond any "reasonable time." Thompson was repeatedly absent from his scheduled appearances and failed to obtain counsel even though he had more than ample opportunity to do so.

Thompson was informed of his "legal rights" at his first appearance, which was supposed to take place January 7, 2021, but, because Thompson failed to appear, took place February 4, 2021, instead. The case was continued "for counsel" to May 27, 2021, and then again to July 8, 2021. Thompson did not appear at the July 8 hearing. He appeared July 22, and the associate circuit division informed him again of his rights and continued the case so Thompson could find counsel. At the next hearing on August 26, 2021, the case was continued once more "for counsel." Thompson failed to appear at the rescheduled hearing, which was supposed to have been held September 30. He appeared a month later, on October 28, 2021, and the court again continued the case to January 13, 2022, so Thompson could find counsel. He failed to appear in January, and, on March 3, 2022, a warrant was served on Thompson.[2] He posted a cash bond for his release. On March 24, the associate circuit division scheduled the preliminary hearing for June 9, thereby giving Thompson one last chance – and approximately 11 weeks – to retain counsel. He failed to do so, and the preliminary hearing was held on June 9, 2022.

---

to hold Thompson's preliminary hearing far exceeded "a reasonable time," but this delay was attributable to Thompson's failure to diligently seek or obtain counsel.
[2] The associate circuit division issued multiple warrants for Thompson's arrest for failure to appear, but recalled them all except for the one served on this date.

No less than 18 months passed between the time the felony complaint against Thompson was filed and the time the preliminary hearing was finally held. Thompson had that entire time to retain counsel and chose not to do so. He appeared in court multiple times, he was informed multiple times of his rights (presumably including his right to be represented by counsel), and Thompson's case was continued multiple times to allow him to exercise his right to counsel. The record below is sparse,[3] but it clearly indicates the associate circuit division repeatedly continued the hearing for the purpose of allowing Thompson to retain counsel. It stretches the imagination to the breaking point to suggest Thompson was unaware he had a right to be represented or was unaware hiring an attorney, if he wanted one, was a matter of immediate and pressing concern.

If Thompson was unable to afford a lawyer, he never alerted the associate circuit division to this fact or sought representation by the public defender. Only on appeal does Thompson get around to arguing he was indigent and unable to retain counsel. Nothing in the record suggests he made this known in the 18 months prior to his preliminary

---

[3] Thompson would have this Court consider this lack of a perfect record as a lack of evidence that he was ever informed of his legal rights. However, "[a]bsent a record to the contrary, the presumption is that the court acted properly." *State v. Cooper*, 660 S.W.2d 184, 188 (Mo. App. 1983) (finding, when a defendant claimed the circuit court failed to advise him of his right to counsel and no transcript of the initial proceeding existed in the record on appeal, it was presumed that the court acted properly). Without a record demonstrating otherwise, it is presumed the circuit court acted properly and advised Thompson of his right to counsel. This presumption is further bolstered by the fact that the court did record that it had informed Thompson of his "legal rights" at least twice and that the case was continued explicitly "for counsel" multiple times. According to the state in its response to Thompson's motion for new trial, Thompson was informed on multiple occasions of his right to counsel, and the court had scheduled appearances for "counsel status" multiple times.

hearing, and it is clear he never applied for a public defender or sought to demonstrate his indigency any time prior to his preliminary hearing.[4]

Thompson's behavior demonstrates a willful attempt to delay the proceedings against him rather than any confusion or lack of knowledge as to his legal rights or an inability to exercise them. Within a month of being bound over following the preliminary hearing, appearances were entered on Thompson's behalf by both the public defender and private counsel. This strongly suggests Thompson understood what he needed to do to obtain representation and could have done so at any time during the 18-month delay he caused.

Thompson is and was entitled to be represented and to have counsel appointed if he could not afford to retain one. But he cannot invoke that right and then use it to scuttle

---

[4] Rule 31.02(a) requires circuit courts to appoint counsel only upon a determination of the defendant's indigency. *State v. Woolery*, 687 S.W.3d 652, 662 (Mo. banc 2024). In Missouri, there is a "well-settled process for appointing counsel for indigent defendants." *Id.* at 663. The public defender must make an initial indigency determination based upon an application submitted by the defendant. *Id.* (citing section 600.086.3, RSMo 2016). The defendant claiming indigency must file an affidavit with the court "containing the factual information necessary to determine indigency." *Id.* A person is considered eligible for representation by the public defender

> "when it appears from all the circumstances of the case including his ability to make bond, his income and the number of persons dependent on him for support that the person does not have the means at his disposal or available to him to obtain counsel in his behalf and is indigent as hereafter determined."

§ 600.086, RSMo 2016. Only after the public defender makes a determination about the defendant's indigency and a showing of indigency is made to the court will the court's Rule 31.02(a) duty to appoint counsel arise. *Woolery*, 687 S.W.3d at 663. Thompson did not file an affidavit with the associated circuit division, nor did the public defender make any determination of indigency before Thompson's preliminary hearing. Therefore, the court was not required to appoint counsel under Rule 31.02.

the proceedings against him. "[A] defendant cannot purposefully refuse to hire an attorney and then cry foul when his trial commences without one." *State v. Ehnes*, 930 S.W.2d 441, 447 (Mo. App. 1996).

> [A]n accused should never be permitted to play a "'cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *United States v. McMann,* 386 F.2d 611, 618-19 (2nd Cir. 1967), *cert. denied,* 390 U.S. 958, 88 S. Ct. 1049, 19 L.Ed. 2d 1153 (1968). Conscious attempts by a defendant to manipulate or intentionally delay the proceedings by refusing to hire private counsel should not be tolerated because such tactics imply "a greater understanding of the proceedings and an understanding of the risks and complexities of a criminal trial." *Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1067 (11th Cir. 1986).

*State v. Wilson*, 816 S.W.2d 301, 308 (Mo. App. 1991) (second alteration in original).

Unless the defendant claims to be indigent and makes the public defender and the court aware of that contention, the right to counsel is no more than the right to a reasonable opportunity to obtain counsel. Thompson failed to exercise that right, and his failure was knowing, voluntary, and deliberate. He was given more than a year and a half to find counsel, to claim indigency and apply for a public defender, or to waive his right to counsel expressly and proceed to represent himself. Thompson failed to do any of those things in the time the associate circuit division gave him. Far from infringing on Thompson's constitutional rights, the associate circuit division took great pains to protect those rights. Rights must be exercised, however, and Thompson failed to exercise his. This point is denied.

9

## II. Thompson's claim regarding the lesser-included offense instruction is denied

Section 565.074[5] provides that a defendant is guilty of third-degree domestic assault if he or she: (1) attempts to cause physical injury; or (2) knowingly causes physical pain or illness; (3) to a domestic victim as defined in section 565.002[6]. The circuit court read Instruction No. 5 to the jury, which stated, in pertinent part:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> > First, that on or about June 27, 2020, in the State of Missouri, the defendant attempted to cause physical injury to [Victim] by striking [Victim] with a vehicle,
> >
> > Second, that [Victim] and defendant were persons who had been in a continuing social relationship of a romantic or intimate nature, and
> >
> > Third, that defendant knew or was aware that [Victim] and defendant were persons who had been in a continuing social relationship of a romantic or intimate nature,
>
> then you will find the defendant guilty under Count I of domestic assault in the third degree.

There were no objections, and Thompson attributes no error to this instruction on appeal.

Section 565.076 provides, in pertinent part, that a defendant is guilty of fourth-degree domestic assault if he or she: (1) attempts to cause physical injury, physical pain, or illness; or (2) recklessly causes physical injury, physical pain, or illness; (3) to a

---

[5]  All references to section 565.074 are to RSMo 2016 unless otherwise noted.
[6]  All references to sections 565.002 and 565.076 are to RSMo Supp. 2017 unless otherwise noted.

domestic victim as defined in section 565.002.  The circuit court read Instruction No. 7 to

the jury, which stated in pertinent part:

> If you do not find the defendant guilty of domestic assault in the third
> degree as submitted in Instruction No. 5, you must consider whether he is
> guilty of domestic assault in the fourth degree under this instruction.  If you
> find and believe from the evidence beyond a reasonable doubt:
>
>> First, that on or about June 27, 2020, in the State of Missouri, the
>> defendant recklessly caused physical injury to [Victim] by striking
>> [Victim] with a vehicle,
>>
>> Second, that [Victim] and defendant were persons who had been in a
>> continuing social relationship of a romantic or intimate nature, and
>>
>> Third, that defendant knew or was aware that [Victim] and defendant
>> were persons who had been in a continuing social relationship of a
>> romantic or intimate nature,
>
> then you will find the defendant guilty of domestic assault in the fourth
> degree.

When the circuit court asked during the instruction conference if there were any

objections to Instruction No. 7, the following colloquy occurred:

> [STATE:]  ….  We have no objection to this lesser included.  I think and
> it's our understanding that the defense wants this instruction as well….
>
> COURT: Very well. Noted for the record.  [Defense Counsel,] any response
> to that?
>
> [DEFENSE:] No response. And I guess just for the record, I'll clarify that
> we are in agreement with this proposal [sic] lesser.  But the record will
> show I did previously submit an alternative proposal which would have the
> same elements for third and fourth.[7]  I hope I'm correct in saying the
> Court rejected that, and in lieu of that instruction, agreed to include this.  So
> I have no objection to this lesser, but I do want the record to reflect that I
> had proposed the lesser, you know, containing the same elements…. I

---

7   As noted above, defense counsel submitted a proposed instruction for fourth-degree
domestic assault that tracked Instruction No. 5, the verdict director for third-degree
domestic assault, word for word.

11

e-filed those.  So those would be in the record.  I just want to point that out.  But with respect to this instruction, I have no objection.

Instruction conferences are difficult for the circuit court as well as counsel.  They come at or near the end of trial, time is short, and simply managing the paper can be difficult.  When disputed legal issues are introduced on top of the ordinary difficulties, it can be trying for the circuit court – not to mention a reviewing court – to know exactly what positions are and are not being taken.  This is why Rule 28.03 provides:

> Counsel shall make specific objections to instruction or verdict forms considered erroneous.  No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Rule 28.03.

The transcript of the instruction conference shows Thompson's counsel did not object to Instruction No. 7.  In fact, he twice stated he agreed with it and twice stated he had no objection to it.  "A defendant invites error and waives appellate review of a claim of instructional error when the defendant jointly proffers an erroneous instruction." *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017).  "It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making." *State v. Mayes,* 63 S.W.3d 615, 632 n.6 (Mo. banc 2001) (alteration omitted).  "When Defendant requested that the trial court submit the instruction in question, she waived appellate review of the trial court's submission of that instruction to the jury." *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012).  "Although plain error review is discretionary, this Court will not

12

use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Id.*

Even if, as Thompson now claims, defense counsel's position was that the circuit court should have given the lesser-included instruction he submitted and not the one it gave as Instruction No. 7, the transcript falls well short of memorializing that position. Some instructions are either given or not, and tendering such an instruction, followed by the circuit court's decision not to give it, is sufficient to preserve the matter, provided adequate grounds for the tendered instruction are distinctly stated and the issue is included in the new trial motion. But, when an instruction is tendered and the circuit court decides to give a different instruction instead, the objection is not merely that the court decided not to give the tendered instruction but that the court decided to give a different instruction instead. Then, an objection must be made both to the instruction given and the failure to give the tendered instruction. Defense counsel affirmatively waived any objection to the former and never distinctly stated his reasons for why his tendered version of the lesser-included instruction should have been given.

Even if plain error was available (and requested) in this appeal, the circuit court did not err in failing to give the tendered lesser-included instruction or in giving Instruction No. 7 as it did. Section 556.046[8] defines an included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." From this, Thompson argues he was entitled to

---

[8]   All references to section 556.046 are to RSMo Supp. 2022 unless otherwise noted.

submit, as an included offense of third-degree domestic assault, an instruction setting forth the very same elements because the "same" evidence establishing those elements also can establish domestic assault in the fourth degree. *Compare* § 565.074 (providing, among other means, a defendant can be found guilty of third-degree domestic assault if he or she attempts to cause physical injury to a domestic victim as defined in section 565.002), *and* § 565.076 (providing, among other means, a defendant can be found guilty of fourth-degree domestic assault if he or she attempts to cause physical injury to a domestic victim as defined in section 565.002).

Thompson overlooks section 556.046.2, which states the "court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the person of the offense charged and convicting him or her of the included offense." There can never be a "rational basis" for the jury to acquit a defendant of the charged crime and convict him of the included offense when the two are comprised of exactly the same elements stated in exactly the same way. *See State v. Moseley*, 735 S.W.2d 46, 49 (Mo. App. 1987) (holding a defendant is not entitled to a lesser-included offense instruction when the same facts would establish the commission of both the charged offense and the "included" offense because "there could be no basis in fact for the jury to acquit the defendant of [the charged offense] and convict him of [the included offense]"). "Instead, when the same facts would establish the commission of two different statutory offenses, it is for the prosecutor – not a fact-finder – to choose the offense(s) for which the defendant will be prosecuted." *State v. Burkhalter*, 632 S.W.3d 850, 855 (Mo. App. 2021) (emphasis omitted).

14

Though there is some overlap between third-degree domestic assault and fourth-degree domestic assault, it is possible to commit the latter without committing the former. Under section 565.076, a defendant is guilty of fourth-degree domestic assault if he or she recklessly causes physical pain to a domestic victim as defined in section 565.002, even though there was no attempt to cause physical injury. Under section 565.074, third-degree domestic assault cannot be committed by recklessly causing physical pain. Because the evidence in this case was such that a rational juror could acquit Thompson of attempting to cause physical injury but find him guilty of recklessly causing physical pain, the circuit court properly rejected Thompson's tendered lesser-included instruction and properly gave Instruction No. 7 instead. Finding no error, let alone plain error, this point is denied.

### III. Thompson's claim regarding the corrective jury instruction after inconsistent verdicts is denied

Thompson argues the circuit court erred in submitting a corrective instruction after discovering the jury's verdicts were inconsistent. "Whether a jury was instructed properly is a question of law this Court reviews *de novo*." *State v. Hamby*, 669 S.W.3d 76, 83 (Mo. banc 2023) (quotations omitted). The Court will reverse "only if the instructional error misled the jury and … prejudiced the defendant." *Id*. (quotation omitted). The error must be so prejudicial that the defendant was deprived of a fair trial. *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016). Thompson fails to show the circuit court erred in giving a corrective instruction after the jury returned inconsistent

15

verdicts for Count I.  Even if the Court had done so, such an error did not prejudice Thompson.

The jury returned a verdict form signed by the foreperson stating:  "As to Count I, we, the jury, find the defendant David M. Thompson not guilty."   The jury also returned a verdict form signed by the foreperson stating:  "As to Count I, we, the jury, find the defendant David M. Thompson guilty of domestic assault in the fourth degree as submitted in Instruction No. 7."[9]  The circuit court originally accepted these verdicts. During an ensuing break, however, and before the jury had been discharged, the court discovered the inconsistency.

After speaking with counsel, the circuit court gave the following corrective instruction the prosecutor prepared:

> You have returned inconsistent verdicts with regard to Count I. Specifically, you have found the defendant not guilty as to Count I and guilty of domestic assault in the 4th degree as submitted in instruction number 7. Only one of these can be your correct verdict. Please return to your deliberations and specify whether you have found the defendant not guilty as to Count I OR guilty of domestic assault in the 4th degree as submitted in instruction number 7.

Defense counsel did not object to the form of this instruction.  Instead, he objected to the idea that the jury could return to its deliberations.  Thompson claims the moment the jury returned the verdict form stating he was not guilty as to Count I, further

---

[9]  Though not models of clarity, it does not appear these two verdicts were strictly inconsistent as they can be reconciled in the manner the jury ultimately did. Nevertheless, the circuit court found these verdicts to be inconsistent, and neither party argues that decision was incorrect.  Accordingly, this Court treats the verdicts as inconsistent for purposes of Thompson's claim on appeal.

16

deliberations were not permitted, and the circuit court should have moved to the penalty phase for Count II alone.

Thompson's argument ignores the jury's evident confusion and the circuit court's authority to address it. This Court has stated a "jury's verdict is not binding until it is accepted by the court ***and the jury is discharged***." *State v. Peters*, 855 S.W.2d 345, 348 (Mo. banc 1993) (emphasis added) (quotation omitted). Trial judges are encouraged to make every effort to salvage improper verdicts by calling the jury's attention to mistakes and giving it an opportunity to correct them, as long as the court acts before discharging the jury. *Id*. at 349.

The circuit court acted properly under *Peters*. The court discovered the inconsistency in the jury's verdicts before the jury had been discharged and, therefore, had authority to ask the jury to straighten out the confusion. Thompson was not entitled to the not-guilty verdict simply because it was on the top of the pile. Nor was Thompson entitled to the benefit of the confusion over verdict forms when the jury had not been discharged and was available to be asked to state its intentions unmistakably. Nothing about the circuit court's actions or its corrective instruction unfairly prejudiced Thompson in any way, and neither deprived Thompson of a fair trial. This point is denied.

**Conclusion**

For the reasons set forth above, the circuit court's judgment is affirmed.

_____
Paul C. Wilson, Judge

All concur.